## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

KYLE MELONE,                          :
     *Plaintiff,*            :
                                 :
v.                                    :       **CIVIL ACTION NO:**
                                 :       **1:18-cv-00220-WES-PAS**
AMAZON FULFILLMENT SERVICES, :
INC., LG CHEM, LTD.,                  :
and KMG-IMPORTS, LLC,                 :
     *Defendants.*          :

### AMENDED COMPLAINT

### Parties

1.      Plaintiff, KYLE MELONE ("Plaintiff" or "Mr. Melone") is a citizen and resident of Providence County, in the state of Rhode Island.

2.      Defendant, AMAZON FULFILLMENT SERVICES, INC., hereinafter referred to as "Amazon" is a corporation that is incorporated under the laws of the State of Delaware.  Amazon has its principal place of business in the State of Washington.  It is an online retailer selling a myriad of products, including electronic cigarettes and lithium ion batteries.   Amazon at all times relevant did substantial and continuous business in the State of Rhode Island.

3.      Defendant, LG CHEM, LTD., hereinafter referred to as "LG" is a corporation that is incorporated under the laws of the South Korea.  LG is a wholesaler of electronic goods, including lithium ion batteries.  LG at all times relevant did substantial and continuous business in the State of Rhode Island.

4.      Defendant, KMG-Imports, LLC, hereinafter referred to as "KMG" is a limited liability corporation that is incorporated under the laws of the State of California.  KMG has its principal place of business in the State of California.  It is an importer and

1

distributor specializing in electronic cigarettes and paraphernalia. KMG at all times relevant did substantial and continuous business in the State of Rhode Island.

## Venue and Jurisdiction

5.     This Court has personal jurisdiction over the issues and the parties to this cause of action.  Amazon, LG, and KMG at all times relevant did substantial business in the State of Rhode Island.

6.     A substantial part of the events and omissions giving rise to Plaintiff's causes of actions occurred in Rhode Island.  Through these actions, Defendants have significant contacts with this jurisdiction such that requiring their appearance does not offend traditional notions of fair play and substantial justice.

7.     Defendants have and continue to conduct substantial business in the State of Rhode Island, including marketing and distributing products in this State. Defendants further receive substantial compensation and profits from sales of the products in this District, and they made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to *in personam* jurisdiction in this District.

8.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants, because Defendants are present in the State of Rhode Island, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

9.     Federal subject matter jurisdiction is based upon 28 U.S.C. §1332(a), in that there is complete diversity among Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

10.     A substantial part of the events and omissions giving rise to Plaintiff's

2

causes of action occurred in Rhode Island.  Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district.

11.    Further, venue is proper in this Court pursuant to 28 U.S.C. 1391 by virtue of the fact that Defendants' products are sold to and consumed by individuals in the State of Rhode Island, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District.

## Facts

12.    Manufacturers, distributors, and sellers of electronic cigarettes, or "e-cigarettes," as they are more commonly known, claim to provide a tobacco-free and smoke-free alternative to traditional cigarettes. E-cigarettes offer doses of nicotine via a vaporized solution.

13.    All e-cigarettes are designed and function in a similar way.  They consist of three primary component parts: a tank or cartridge that is filled with a liquid (known as "juice" or "e-liquid") that usually contains a concentration of nicotine; an atomizer, which heats and converts the contents of the liquid-filled cartridge to a vapor that the user then inhales; and a battery, which provides power for the atomizer.  The atomizer itself typically contains three components: the casing; the wire (or "coil"); and the wicking material.  The wire is wrapped around the wicking material (usually cotton) in a coil formation; the two ends of the coil are then connected to the casing in a way that permits contact with the battery.  When e-liquid is added to the e-cigarette's tank, the wicking material absorbs it. When the user activates the e-cigarette's battery, the coil heats, vaporizing the e-liquid within the wicking material.

14.     E-cigarette batteries are typically cylindrical lithium-ion batteries.  Some e-cigarette batteries are rechargeable, and others are disposable.  Some e-cigarettes are closed systems, in which prefilled tanks are used; others are also open systems that allow the user to manually refill the tank with e-liquid.  E-cigarettes come in pen form (these are usually plastic and are modeled after a traditional cigarette) and in a form known as a 'mod.'  Mods are metal devices that are heavier than pen e-cigarettes and carry a much higher capacity for juice and creation of vapor.  There are many different types of mods, some of which require the use and replacement of atomizer coils like those described above.

15.     While e-cigarettes were first patented in 2003, they first entered the market exclusively in China in 2004, and did not first appear in the United States until 2007.  Since that time, U.S. sales of electronic cigarettes have risen dramatically — from approximately $20 million in 2008 to $2.5 billion in 2014.  According to some media sources, industry experts predict the e-cigarette industry will reach $32.11 billion by 2021.

16.     Lithium ion batteries, commonly used in e-cigarettes pose a risk of fire and explosion that is magnified when combined with the e-cigarettes' heating elements.  A medical case report of a man in New Jersey, whose e-cigarette exploded in his pocket causing him severe burns, noted, "the potential for serious burn injuries related to device malfunction is of concern."  In particular, lithium ion batteries are susceptible to a condition known as "thermal runaway," whereby the internal battery temperature can cause a fire or explosion.

17.     Some tout e-cigarettes as a safer alternative to traditional cigarettes because e-cigarettes do not contain tobacco, do not actually burn or create smoke, and do not pose the same risks of second-hand smoke inhalation.  However, these supposedly "safer"

alternatives to traditional cigarettes are still the subject of debate, as they still often provide nicotine, which is a neurotoxin and extremely addictive. Further, the actual and long-term effects of the chemicals in e-liquid and vapor are unknown, as the technology is still relatively new.

18.     E-cigarettes also widely appeal to consumers, as they are heavily advertised, offer a cheaper alternative to smoking, and allegedly present a "safer" alternative to smoking. E-cigarette users can choose from a number of options, from the more traditional pen, to the bigger mods like the one used by Mr. Melone, and can choose from thousands of e-liquid flavors. Further, despite some recent, patchwork local regulations regarding indoor use, e-cigarettes are often advertised as enabling a user to smoke in what are otherwise smoke-free environments.

19.     Only a few federal regulations have been promulgated or proposed regarding e-cigarette sales and use. Many of these products are shipped from China and placed into the stream of commerce without any knowledge as to what is in them, how they were made, or whether they are safe for consumers.

20.     In 2009, the United States Food and Drug Administration ("FDA") first attempted to regulate e-cigarettes under the Food, Drug, and Cosmetic Act ("FDCA"). E-cigarette manufacturers then successfully sued the FDA, claiming e-cigarettes should not be considered medical devices subject to the provisions of FDCA. Because of this ruling and lack of regulatory oversight, e-cigarette sales skyrocketed.

21.     On April 25, 2014, the FDA released a proposed regulation that would extend the statutory definition of "tobacco product" to include e-cigarettes. While the FDA regulates traditional cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless

tobacco under its tobacco control authority, e-cigarettes are not yet defined as a tobacco product.

22.     The October 2014 report notes the proposed FDA regulations do not include any consideration of the battery or electronic components of the devices, as the FDA is only addressing the health effects of vapor inhalation.   Further, the U.S. Fire Administration noted the World Health Organization recently proposed member states adopt stringent controls on e-cigarettes, but did not include any language addressing the electronics themselves.   The U.S. Consumer Product Safety Commission has advised e-cigarettes do not fall under its jurisdiction.   As noted in October 2014, and as was the case when Kyle Melone purchased his e-cigarette, "no regulation, code or law applies to the safety of the electronics or batteries in e-cigarettes.   While many consumer products are required to be tested by a nationally recognized test laboratory . . . there are no requirements that e-cigarettes be subjected to the product safety testing."

23.     On August 8, 2016, a new FDA rule took effect expanding regulation to e-cigarettes.   According to the FDA [t]his final rule has two purposes: (1) To deem all products that meet the definition of "tobacco product" under the law, except accessories of a newly deemed tobacco product, and subject them to the tobacco control authorities in chapter IX of the FD&C Act and FDA's implementing regulations; and (2) to establish specific restrictions that are appropriate for the protection of the public health for the newly deemed tobacco products.

24.     E-cigarettes are more dangerous than other lithium battery containing products because the battery is installed in a cylindrical device, and thus when it fails, it can be propelled like a bullet or rocket.   U.S. Fire Administration, *Electronic Cigarette*

*Fires and Explosions*, October 2014, at 5.  There are different methods to protecting these batteries, but because of a lack of regulation, the protection of the battery is up to the e-cigarette manufacturers.

25.     E-cigarettes have caused numerous fires and explosions injuring consumers. Federal, state, and local efforts have recently been aimed at protecting public health via regulations on sale and use of e-cigarettes, but not on the safety hazards posed by the products themselves.

26.     There is mounting evidence the explosions and fires caused by e-cigarettes and lithium ion batteries are increasing in occurrence.  The U.S. Department of Transportation ("DOT") issued a rule banning e-cigarettes from checked bags on airplanes because they have been known to catch fire.  The DOT has also determined e-cigarettes may not be used during flight.  The explosion of e-cigarettes and lithium ion batteries are not novel occurrences; a California man recently lost his eye as a result of an e-cigarette exploding near him.  A southern California woman was set on fire after an e-cigarette exploded while she was a passenger in a car.  An Atlanta woman's couch and rug caught on fire after an e-cigarette exploded, almost burning her house down.  Complaints of injury caused by e-cigarettes continue to rise as the devices' popularity increases.  These products continue to be placed into the stream of commerce in an untested and unsafe condition, and will continue to cause injuries unless and until those responsible are held accountable.

27.     Defendant Amazon through its agents, servants and employees, participated in delivery of the LG HG2 18650 3000mAh Flat Top Rechargeable Batteries ("HG2"), a battery that powered Plaintiff's electronic cigarette.

28.     Defendant LG its agents, servants and employees, participated in the manufacturer and delivery of the HG2, a battery that powered Plaintiff's electronic cigarette.

29.     Defendant KMG through its agents, servants and employees, participated in delivery of the Plaintiff's electronic cigarette, the Pioneer4You iPV5 200W TC Box Mod ("IPV5").

30.     Mr. Melone purchased his lithium ion batteries from Amazon on April 3, 2016.

31.     On May 14, 2017, Plaintiff had two HG2 batteries in his right pocket while a passenger in his father's car.

32.     The HG2s spontaneously exploded in Plaintiff's pocket setting his shorts and leg on fire.

33.     Mr. Melone jumped out of the car and attempted to remove the batteries from his pocket and extinguish the flames, resulting in burns to his hands.

34.     Plaintiff was then taken to the closest hospital, Our Lady of Fatima Hospital, where he remained for half an hour before transported via ambulance to Rhode Island Hospital.

35.     Mr. Melone was in the Intensive Care Unit for the next 3 days.

36.     Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

37.     As a result of the explosion, Plaintiff has incurred substantial medical bills.

38.     Plaintiff has suffered lost wages as a result of the complications stemming from the lithium ion battery explosion.

39.     Upon information and belief, Amazon and LG were aware, or should have been aware, of the defect in manufacture and design of the HG2.

40.     Upon information and belief, KMG was aware, or should have been aware, of the defect in manufacture and design of the IPV5.

## COUNT I

### Negligence against Amazon for Distribution and Sale of the HG2

41.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

42.     Defendant Amazon's actions were negligent in the following respects;

43.     Amazon at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the HG2.

44.     Amazon at all times mentioned knew, or in the exercise of reasonable care should have known, that the HG2 was of such a nature that it was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and was reasonably likely to injure e-cigarette users.

45.     Amazon negligently and carelessly designed, manufactured, tested, inspected,  packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the HG2 such that the product was dangerous and unsafe for the use and purpose for which it was intended.

46.     Amazon was aware of the probable consequences of the HG2.    Amazon knew, or should have known, the HG2 would cause serious injury; they failed to disclose

the known or knowable risks associated with the HG2.  Amazon willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

47.     Defendant Amazon owed a duty to adequately warn the Plaintiff of the risks of explosion associated with the HG2 and the resulting harm and risk it would cause users.

48.     Defendant Amazon breached their duty by placing the HG2 into the stream of commerce without study, testing, inspection, or adequate warning.

49.     As a direct and proximate result of the duties breached, the HG2 used by Plaintiff exploded, resulting in Plaintiff suffering pain and harm.

50.     As a direct and proximate result of Amazon's negligence, Plaintiff has suffered injuries and damages.

51.     Amazon's conduct in continuing to market, sell and distribute the HG2 and other lithium ion batteries after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Amazon and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT II</u>

**Negligence against LG for Manufacture, Distribution, and Sale of the HG2**

10

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

53. Defendant LG actions were negligent in the following respects;

54. LG at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the HG2.

55. LG at all times mentioned knew, or in the exercise of reasonable care should have known, that the HG2 was of such a nature that it was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and was reasonably likely to injure e-cigarette users.

56. LG negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the HG2 such that the product was dangerous and unsafe for the use and purpose for which it was intended.

57. LG was aware of the probable consequences of the HG2.

58. LG knew, or should have known, the HG2 would cause serious injury; they failed to disclose the known or knowable risks associated with the HG2. LG willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

59. Defendant LG owed a duty to adequately warn the Plaintiff of the risks of explosion associated with the HG2 and the resulting harm and risk it would cause users.

60.     Defendant LG breached their duty by placing the HG2 into the stream of commerce without study, testing, inspection, or adequate warning.

61.     As a direct and proximate result of the duties breached, the HG2 used by Plaintiff exploded, resulting in Plaintiff suffering pain and harm.

62.     As a direct and proximate result of LG's negligence, Plaintiff has suffered injuries and damages.

63.     LG's conduct in continuing to market, sell and distribute the HG2 and other lithium ion batteries after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter LG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT III</u>

### Negligence against KMG for Distribution and Sale of the IPV5

64.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

65.     Defendant KMG's actions were negligent in the following respects;

66.     KMG at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the IPV5.

67.     KMG at all times mentioned knew, or in the exercise of reasonable care should have known, that the IPV5 was of such a nature that it was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and was reasonably likely to injure e-cigarette users.

68.     KMG negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the IPV5 such that the product was dangerous and unsafe for the use and purpose for which it was intended.

69.     KMG was aware of the probable consequences of the IPV5.   KMG knew, or should have known, the IPV5 would cause serious injury; they failed to disclose the known or knowable risks associated with the IPV5.  KMG willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

70.     Defendant KMG owed a duty to adequately warn the Plaintiff of the risks of explosion associated with lithium ion batteries used in conjunction with the IPV5 and the resulting harm and risk it would cause users.

71.     Defendant KMG breached their duty by placing the IPV5 into the stream of commerce without study, testing, inspection, or adequate warning.

72.     As a direct and proximate result of the duties breached, the HG2 used by Plaintiff exploded, resulting in Plaintiff suffering pain and harm.

73.     As a direct and proximate result of KMG negligence, Plaintiff have suffered injuries and damages.

74.     KMG's conduct in continuing to market, sell and distribute the IPV5 and other mods after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter KMG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT IV</u>

**Strict Product Liability against Amazon for Distribution and Sale of the HG2**

75.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

76.     Defendant Amazon is strictly liable to Plaintiff in the following respects: Amazon distributed, conveyed and/or sold the HG2 for use in electronic cigarettes; the HG2 was defective because it failed to perform safely and effectively for the purpose it was originally designed.  Plaintiff Kyle Melone's HG2 was a device that failed while in his pocket, causing him to develop serious physical complications, which will require subsequent, painful and continued medical care; at all times mentioned, the HG2 was substantially in the same condition as when it left the possession of Amazon; and the battery was being used in a manner reasonably anticipated at the time it was sold to Plaintiff.

77.     Furthermore, the HG2s, like the one sold to Plaintiff, at the time they left the possession of Amazon were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i.      The HG2 was sold in a defective condition by design and manufacture;

ii      The HG2 as designed and manufactured was unsafe for use by Plaintiff.

iii.    The HG2 as designed and manufactured was unreasonably dangerous to Plaintiff;

iv.     The HG2 did not perform safely as an ordinary consumer, like Plaintiff, would expect;

v.      The HG2 as designed and manufactured was unsafe for its intended use;

vi.     Amazon had a duty to warn the end user about the dangers and risk of the product;

vii.    Amazon knew, or should have known, the component parts of the HG2 as implemented through design and/or manufacture could cause injury to the end user;

viii.   Failing to provide adequate, safe and effective warnings with the HG2 to warn of the possibility of explosion;

ix.     Failing to avoid explosion of the HG2 after use in e-cigarettes or charging in a battery pack.

x.      Any other acts of failures to act by Amazon regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising,

marketing, promoting, distributing, and/or sale of HG2 as will be learned during the discovery process.

78.     Amazon's conduct in continuing to market, sell and distribute the HG2 after obtaining knowledge lithium ion batteries were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying and award of additional damages for aggravating circumstances in such a sum which will serve to deter Amazon and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V

### Strict Product Liability against LG for Manufacture, Distribution, and Sale of the HG2

79.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

80.     Defendant LG is strictly liable to Plaintiff in the following respects: LG distributed, conveyed and/or sold the HG2 for use in electronic cigarettes; the HG2 was defective because it failed to perform safely and effectively for the purpose it was originally designed.   Plaintiff Kyle Melone's HG2 was a device that failed while in his pocket, causing him to develop serious physical complications, which will require subsequent, painful and continued medical care; at all times mentioned, the HG2 was substantially in

the same condition as when it left the possession of LG; and the battery was being used in a manner reasonably anticipated at the time it was sold to Plaintiff.

81.     Furthermore, the HG2s, like the one sold to Plaintiff, at the time they left the possession of LG were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i.      The HG2 was sold in a defective condition by design and manufacture;

ii      The HG2 as designed and manufactured was unsafe for use by Plaintiff.

iii.    The HG2 as designed and manufactured was unreasonably dangerous to Plaintiff;

iv.     The HG2 did not perform safely as an ordinary consumer, like Plaintiff, would expect;

v.      The HG2 as designed and manufactured was unsafe for its intended use;

vi.     LG had a duty to warn the end user about the dangers and risk of the product;

vii.    LG knew, or should have known, the component parts of the HG2 as implemented through design and/or manufacture could cause injury to the end user;

viii.   Failing to provide adequate, safe and effective warnings with the HG2 to warn of the possibility of explosion;

ix.     Failing to avoid explosion of the HG2 after use in e-cigarettes or charging in a battery pack.

x.      Any other acts of failures to act by LG regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising,

marketing, promoting, distributing, and/or sale of HG2 as will be learned during the discovery process.

82.     LG's conduct in continuing to market, sell and distribute the HG2 after obtaining knowledge lithium ion batteries were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying and award of additional damages for aggravating circumstances in such a sum which will serve to deter LG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT VI</u>

### Strict Product Liability against KMG for Distribution and Sale of the IPV5

83.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

84.     Defendant KMG is strictly liable to Plaintiff in the following respects: Amazon distributed, conveyed and/or sold the IPV5 for use as an electronic cigarettes; the IPV5 was defective because it failed to perform safely and effectively for the purpose it was originally designed.  Plaintiff Kyle Melone's IPV5 was a device that impacted a failure of his HG2 batteries while in his pocket, causing him to develop serious physical complications, which will require subsequent, painful and continued medical care; at all times mentioned, the IPV5 was substantially in the same condition as when it left the

possession of KMG; and the IPV5 was being used in a manner reasonably anticipated at the time it was sold to Plaintiff.

85.     Furthermore, the IPV5 sold to Plaintiff, at the time it left the possession of KMG were inherently dangerous for its intended use and was an unreasonably dangerous product which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i.      The IPV5 was sold in a defective condition by design and manufacture;

ii      The IPV5 as designed and manufactured was unsafe for use by Plaintiff.

iii.    The IPV5 as designed and manufactured was unreasonably dangerous to Plaintiff;

iv.     The IPV5 did not perform safely as an ordinary consumer, like Plaintiff, would expect;

v.      The IPV5 as designed and manufactured was unsafe for its intended use;

vi.     KMG had a duty to warn the end user about the dangers and risk of the product;

vii.    KMG knew, or should have known, the component parts of the IPV5 as implemented through design and/or manufacture could cause injury to the end user;

viii.   Failing to provide adequate, safe and effective warnings with the IPV5 to warn of the possibility of explosion;

ix.     Failing to avoid explosion of the lithium ion batteries after use in IPV5.

x.      Any other acts of failures to act by KMG regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising,

marketing, promoting, distributing, and/or sale of IPV5 as will be learned during the discovery process.

86.     KMG's conduct in continuing to market, sell and distribute the IPV5 after obtaining knowledge e-cigarettes were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying and award of additional damages for aggravating circumstances in such a sum which will serve to deter KMG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VII

**Negligent Infliction of Emotional Distress against Amazon for Distribution and Sale of the HG2**

87.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

88.     Defendant Amazon is liable to Plaintiff for the negligent infliction of emotional distress in the following respect; Plaintiff has suffered severe emotional distress, which was a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the HG2.

89.     Plaintiff has suffered severe emotional distress, which was a result of Amazon's negligent conduct in failing to adequately and safely design and construct an effective and safe lithium ion battery.

90.     Therefore, Amazon is liable to Plaintiff.

91.     Amazon's conduct in continuing to market, sell and distribute the HG2s after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Amazon and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VIII

### Negligent Infliction of Emotional Distress against LG for Manufacture, Distribution, and Sale of the HG2

92.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

93.     Defendant LG is liable to Plaintiff for the negligent infliction of emotional distress in the following respect; Plaintiff has suffered severe emotional distress, which was a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the HG2.

94.     Plaintiff has suffered severe emotional distress, which was a result of LG's negligent conduct in failing to adequately and safely design and construct an effective and safe lithium ion battery.

95.     Therefore, LG is liable to Plaintiff.

96.     LG's conduct in continuing to market, sell and distribute the HG2s after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter LG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT IX</u>

**Negligent Infliction of Emotional Distress against KMG for Distribution and Sale of the IPV5**

97.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

98.     Defendant KMG is liable to Plaintiff for the negligent infliction of emotional distress in the following respect; Plaintiff has suffered severe emotional distress, which was a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the IPV5.

99.     Plaintiff has suffered severe emotional distress, which was a result of KMG's negligent conduct in failing to adequately and safely design and construct an effective and safe e-cigarette.

100.     Therefore, KMG is liable to Plaintiff.

101.     KMG's conduct in continuing to market, sell and distribute IPV5s after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter KMG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT X

### Intentional Infliction of Emotional Distress against Amazon for Distribution and Sale of the HG2

102.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

103.     Defendant Amazon is liable to Plaintiff for the intentional infliction of emotional distress in the following respect: Plaintiff has suffered severe emotional distress, which was a result of Amazon's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the HG2.

104.    Plaintiff has suffered severe emotional distress, which was a result of Amazon's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe lithium ion battery in complete and reckless disregard of safety to Plaintiff Kyle Melone.

105.    Therefore, Amazon is liable to Plaintiff.

106.    Amazon's conduct in continuing to market, sell and distribute the HG2s after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Amazon and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XI

## Intentional Infliction of Emotional Distress against LG for Manufacture, Distribution, and Sale of the HG2

107.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

108.    Defendant LG is liable to Plaintiff for the intentional infliction of emotional distress in the following respect: Plaintiff has suffered severe emotional distress, which was a result of LG's extreme outrageous, intentional, willful, and reckless conduct in

studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the HG2.

109.    Plaintiff has suffered severe emotional distress, which was a result of LG's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe lithium ion battery in complete and reckless disregard of safety to Plaintiff Kyle Melone.

110.    Therefore, LG is liable to Plaintiff.

111.    LG's conduct in continuing to market, sell and distribute the HG2s after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter LG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

<u>**COUNT XII**</u>

**Intentional Infliction of Emotional Distress against KMG for Distribution and Sale of the IPV5**

112.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

113.    Defendant KMG is liable to Plaintiff for the intentional infliction of emotional distress in the following respect: Plaintiff has suffered severe emotional distress,

which was a result of KMG's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the IPV5.

114.    Plaintiff has suffered severe emotional distress, which was a result of KMG's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe IPV5 in complete and reckless disregard of safety to Plaintiff Kyle Melone.

115.    Therefore, KMG is liable to Plaintiff.

116.    KMG's conduct in continuing to market, sell and distribute the IPV5 after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter KMG and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT XIII</u>

### Breach of Implied Warranty against Amazon for Distribution and Sale of the HG2

117.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

118.    Defendant Amazon is liable to Plaintiff for its breach of implied warranty in the following respect: Amazon sold the HG2, which was used by Plaintiff.  Amazon

impliedly warranted to Plaintiff Kyle Melone that the HG2 was of merchantable quality and safe for the use for which it was intended.

119.    Amazon knew or should have known that the HG2 at the time of sale was intended to be used for the purpose of powering e-cigarettes.

120.    Plaintiff Kyle Melone reasonably relied on Amazon's judgment, indications, and statements that the HG2 was fit for such use.

121.    When the HG2s were distributed into the stream of commerce and sold by Amazon, they were unsafe for their intended use, and not of merchantable quality, as warranted by Amazon in that they had very dangerous propensities when used as intended to power e-cigarettes where they could cause serious injury of harm or death to the end user.

122.    Plaintiff has suffered such injuries and damages as a result of Amazon's conduct and action.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT XIV</u>

### Breach of Implied Warranty against LG for Manufacture, Distribution, and Sale of the HG2

123.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

124.    Defendant LG is liable to Plaintiff for its breach of implied warranty in the following respect: LG manufactured and sold the HG2, which was used by Plaintiff. LG impliedly warranted to Plaintiff Kyle Melone that the HG2 was of merchantable quality and safe for the use for which it was intended.

125.    LG knew or should have known that the HG2 at the time of sale was intended to be used for the purpose of powering e-cigarettes.

126.    Plaintiff Kyle Melone reasonably relied on LG's judgment, indications, and statements that the HG2 was fit for such use.

127.    When the HG2s were distributed into the stream of commerce and sold by LG, they were unsafe for their intended use, and not of merchantable quality, as warranted by LG in that they had very dangerous propensities when used as intended to power e-cigarettes where they could cause serious injury of harm or death to the end user.

128.    Plaintiff has suffered such injuries and damages as a result of LG's conduct and action.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XV

**Breach of Implied Warranty against KMG for Distribution and Sale of the IPV5**

129.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

130. Defendant KMG is liable to Plaintiff for its breach of implied warranty in the following respect: KMG sold the IPV5, which was used by Plaintiff.  KMG impliedly warranted to Plaintiff Kyle Melone that the IPV5 was of merchantable quality and safe for the use for which it was intended.

131. KMG knew or should have known that the IPV5 at the time of sale was intended to be used for the purpose of delivering nicotine.

132. Plaintiff Kyle Melone reasonably relied on KMG's judgment, indications, and statements that the IPV5 was fit for such use.

133. When the IPV5 was distributed into the stream of commerce and sold by KMG, it was unsafe for their intended use, and not of merchantable quality, as warranted by KMG in that it had very dangerous propensities when used as intended to be powered by lithium ion batteries where it could cause serious injury of harm or death to the end user.

134. Plaintiff has suffered such injuries and damages as a result of KMG's conduct and action.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XVI

**Failure to Warn against Amazon for Distribution and Sale of the HG2**

135.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

136.     In the course of business, Amazon distributed the HG2 eventually sold to Kyle Melone as a power source for his e-cigarette.

137.     At the time of the design, manufacture and sale of the HG2, and more specifically, at the time Plaintiff Kyle Melone received the HG2, it was defective and unreasonably dangerous when put to it's intended and reasonably anticipated use.  Further, the HG2 was not accompanied by proper warnings regarding significant adverse consequences associated with the HG2.

138.     Amazon failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.  The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product.  Amazon failed to warn of the known or knowable injuries associated with malfunction of the HG2, including but not limited burns, shrapnel wounds, and physical injuries occurring as a consequence of fire and/or explosion.

139.     The dangerous and defective conditions in the HG2 existed at the time it was delivered by the manufacturer to the distributor.  At the time Plaintiff purchased his battery the HG2 was in the same condition as when manufactured, distributed, and sold.

140.     Plaintiff Kyle Melone did not know at the time of his use of the HG2, nor at any time prior thereto, of the existence of the defects in the HG2.

141.     Plaintiff has suffered the aforementioned injuries and damages as a direct result of Amazon's failure to warn.

142.     The conduct of Amazon in continuing to market, promote, sell and distribute the HG2 after obtaining knowledge that the product was failing and not

performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an awarded in such sum which will serve to deter Amazon and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT XVII**

**Failure to Warn against LG for Manufacture, Distribution, and Sale of the HG2**

143.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

144.    In the course of business, LG manufactured, distributed, and sold the HG2 to Kyle Melone as a power source for his e-cigarette.

145.    At the time of the design, manufacture and sale of the HG2, and more specifically, at the time Plaintiff Kyle Melone received the HG2, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use.  Further, the HG2 was not accompanied by proper warnings regarding significant adverse consequences associated with the HG2.

146.    LG failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.  The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product.  LG failed to warn of the known or

31

knowable injuries associated with malfunction of the HG2, including but not limited burns, shrapnel wounds, and physical injuries occurring as a consequence of fire and/or explosion.

147.    The dangerous and defective conditions in the HG2 existed at the time it was delivered by the manufacturer to the distributor.  At the time Plaintiff purchased his battery the HG2 was in the same condition as when manufactured, distributed, and sold.

148.    Plaintiff Kyle Melone did not know at the time of his use of the HG2, nor at any time prior thereto, of the existence of the defects in the HG2.

149.    Plaintiff has suffered the aforementioned injuries and damages as a direct result of LG's failure to warn.

150.    The conduct of LG in continuing to market, promote, sell and distribute the HG2 after obtaining knowledge that the product was failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an awarded in such sum which will serve to deter LG and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XVIII

### Failure to Warn against KMG for Distribution and Sale of the IPV5

151.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

152.    In the course of business, KMG distributed the IPV5 eventually sold to Kyle Melone.

153.    At the time of the design, manufacture and sale of the IPV5, and more specifically, at the time Plaintiff Kyle Melone received the IPV5, it was defective and unreasonably dangerous when put to it's intended and reasonably anticipated use.  Further, the IPV5 was not accompanied by proper warnings regarding significant adverse consequences associated with the IPV5.

154.    KMG failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.  The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product.  KMG failed to warn of the known or knowable injuries associated with malfunction of the IPV5, including but not limited burns, shrapnel wounds, and physical injuries occurring as a consequence of fire and/or explosion.

155.    The dangerous and defective conditions in the IPV5 existed at the time it was delivered by the manufacturer to the distributor.  At the time Plaintiff purchased his IPV5 it was in the same condition as when manufactured, distributed, and sold.

156.    Plaintiff Kyle Melone did not know at the time of his use of the IPV5, nor at any time prior thereto, of the existence of the defects in the IPV5.

157.    Plaintiff has suffered the aforementioned injuries and damages as a direct result of KMG's failure to warn.

158.    The conduct of KMG in continuing to market, promote, sell and distribute the IPV5 after obtaining knowledge that the product was failing and not performing as

represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an awarded in such sum which will serve to deter KMG and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XIX

### FRAUD AGAINST AMAZON FOR DISTRIBUTION AND SALE OF THE HG2

159.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

160.    In the course of business, Amazon distributed HG2 for use as a power source for electronic cigarettes.

161.    At the time of the design, manufacture and sale of the HG2, and more specifically at the time Plaintiff received his battery, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the HG2 was not accompanied by proper warnings regarding significant adverse consequences associated with the HG2.

162.    Defendant Amazon was aware of the dangerous and defective condition of the HG2 and intentionally withheld this information from Plaintiff and the public even though these significant dangers were not readily obvious to the ordinary user of the products.

163.    Amazon fraudulently represented to Plaintiff and the public that the HG2 was a safe product even though they were fully aware of the dangerous and defective nature of the battery which likely could, and would, cause injuries such as those suffered by Plaintiff.

164.    Plaintiff relied upon the fraudulent misrepresentations and concealments of Amazon and purchased the defective HG2.

165.    As a direct and proximate result of Plaintiff's reliance on Amazon's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

166.    The conduct of Amazon in continuing to fraudulently market, promote, sell and distribute the HG2 while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Amazon and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against Amazon for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## <u>COUNT XX</u>

### FRAUD AGAINST LG FOR MANUFACTURE, DISTRIBUTION, AND SALE OF THE HG2

167.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

168.     In the course of business, LG distributed and sold the HG2 for use as a power source for electronic cigarettes.

169.     At the time of the design, manufacture and sale of the HG2, and more specifically at the time Plaintiff received his battery, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the HG2 was not accompanied by proper warnings regarding significant adverse consequences associated with the HG2.

170.     Defendants LG was aware of the dangerous and defective condition of the HG2 and intentionally withheld this information from Plaintiff and the general public even though these significant dangers were not readily obvious to the ordinary user of the products.

171.     LG fraudulently represented to Plaintiff and the public that the HG2 was a safe product even though they were fully aware of the dangerous and defective nature of the battery, which likely could, and would, cause injuries such as those suffered by Plaintiff.

172.     Plaintiff relied upon the fraudulent misrepresentations and concealments of LG and purchased the defective HG2.

173.     As a direct and proximate result of Plaintiff's reliance on LG's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

174.     The conduct of LG in continuing to fraudulently market, promote, sell and distribute the HG2 while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or

conscious disregard for the safety of others justifying an award in such sum which will serve to deter LG and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against LG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT XXI

### FRAUD AGAINST KMG FOR DISTRIBUTION AND SALE OF THE IPV5

175.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

176.    In the course of business, KMG distributed IPV5 for use as a delivery mechanism for nicotine.

177.    At the time of the design, manufacture and sale of the IPV5, and more specifically at the time Plaintiff received his electronic cigarette, it was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the IPV5 was not accompanied by proper warnings regarding significant adverse consequences associated with the IPV5.

178.    Defendant KMG was aware of the dangerous and defective condition of the IPV5 and intentionally withheld this information from Plaintiff and the public even though these significant dangers were not readily obvious to the ordinary user of the products.

179.    KMG fraudulently represented to Plaintiff and the public that the IPV5 was a safe product even though they were fully aware of the dangerous and defective nature of

the IPV5 when used in conjunction with lithium ion batteries, which likely could, and would, cause injuries such as those suffered by Plaintiff.

180.    Plaintiff relied upon the fraudulent misrepresentations and concealments of KMG and purchased the defective IPV5.

181.    As a direct and proximate result of Plaintiff's reliance on KMG's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

182.    The conduct of KMG in continuing to fraudulently market, promote, sell and distribute the IPV5 while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter KMG and others from similar conduct.

**Wherefore**, Plaintiff requests a judgment against KMG for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS**.

Plaintiff, Kyle Melone,
By his Attorneys,

Dated:

_____
Vincent L. Greene, (#5971)
Robert J. McConnell (#3888)
Dennis A. Costigan (#9164)
**MOTLEY RICE LLC**
55 Cedar Street, Suite 100
Providence, RI 02903
401-457-7730 (Phone)
401-457-7708 (FAX)

38

vgreene@motleyrice.com;
dcostigan@motleyrice.com;
bmcconnell@motleyrice.com

### CERTIFICATE OF SERVICE

I, Vincent L Greene IV, hereby certify that a copy of the foregoing ***Plaintiffs' Rule 16 Statement*** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: April 26, 2018                                     /s/ Vincent L. Greene IV